IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLYDE GILBERT TATE,

        Plaintiff,

vs.                                                                                     No. 97cv0380 JP/JHG

JOE WILLIAMS, Warden, and in his
individual capacity, Central New Mexico
Correctional Facility,

JOHN DODD, Sergeant, and in his
individual capacity, Central New Mexico
Correctional Facility,

TERRY DUKE, Medical Administrator and in his
individual capacity, Correctional Medical Systems,

CHRISTINE MONTANO VALLEJOS, Director of
Classification and in her individual capacity,
Central New Mexico Correctional Facility,

DOCTOR BELRAJ DHILLON, Director
of Medical and in his individual capacity,
Correctional Medical Systems,

TRAN-COR OF AMERICA, Prisoner
Transportation Services and in their
individual capacity, Prisoner transportation
service for Central New Mexico Correction Facility,

CORRECTIONAL MEDICAL SYSTEMS,
Medical service for Central New Mexico Correctional
Facility and in their individual capacity,

        Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    This matter is before the Court on Defendants Williams, Duke, Dodd, Montano Vallejos,

Dhillon, and Correctional Medical Systems' (Defendants) Motion for Summary Judgment, filed February 4, 1999. On April 2, 1997, the assigned United States District Judge referred this matter to the undersigned United States Magistrate Judge to submit proposed findings of fact and recommendation for disposition of this motion pursuant to 28 U.S.C. § 636(b)(1)(C). The United States Magistrate Judge, having considered the arguments, pleadings, relevant law, and being otherwise fully informed, finds the motion is well-taken and recommends it be GRANTED.

## I. Background

On March 12, 1997, Tate, a *pro se* litigant, filed his original complaint pursuant to 42 U.S.C. §1983. On April 3, 1997, the undersigned granted Tate leave to proceed pursuant to 28 U.S.C. § 1915. On May 30, 1997, the district court allowed Tate to file a first amended complaint, dismissed his claims against Correctional Corporation and Williams, and denied his motion for a preliminary injunction. On August 19, 1997, the district court allowed Tate to file a second amended complaint and set aside its prior memorandum opinion and order to the extent that Williams was dismissed.

In his second amended complaint filed August 19, 1997, Tate alleged that defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment in that they failed to give him his prescribed heart medication, his false teeth and glasses. He alleges he is entitled to recover under 42 U.S.C. § 1983 for violation of his constitutional rights. He also asserts state law claim for negligence. Tate seeks compensatory damages, and punitive damages.

## II. Standard of Review

This Court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required of those prepared by a lawyer. *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the Court may not assume the role of advocate for the *pro se* litigant,

and need not accept as true unsupported conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A motion for summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact . . . " *Id.* When applying this standard, the Court examines the record and resolves all reasonable inferences in the light most favorable to the non-moving party. *Universal Money Centers v. AT&T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655 (1994).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1355 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to present enough evidence to allow a reasonable jury to find for the non-moving party. *Orback v. Hewlett-Packard Co.,* 97 F.3d 429, 432 (10th Cir. 1996).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden

of proof. *Universal Money Centers v. AT&T*, 22 F.3d at 1529. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1356. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *Universal Money Centers v. AT&T,* 22 F.3d at 1529. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. *Id.*

**III. Discussion**

Tate brought this action under 42 U.S.C. § 1983, which provides civil redress for deprivation of constitutional rights. Section 1983 was enacted to provide protection to those persons wronged by the misuse of power. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980). It creates no substantive civil rights, only a procedural mechanism for enforcing them. *Gallegos v. City &County of Denver*, 984 F.2d 358, 362 (10th Cir.), *cert. denied*, 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993).

Defendants contend they are entitled to summary judgment because Tate failed to allege deliberate indifference and they did not deny Tate medical care.[1] The United States Supreme Court has held that the Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (*quoting Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)); *see also Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (holding that "the Due Process Clause affords ... no greater protection").

While the Eighth Amendment does not mandate comfortable prisons, it also does not permit

---

[1] Defendants do not argue they are entitled to qualified immunity.

4

inhumane ones. *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). However, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078. "After incarceration, only the " 'unnecessary and wanton infliction of pain' "... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Id*. at 319, 106 S.Ct. 1078 (*quoting Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (*quoting Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted))).

While the Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs, the Supreme Court has been careful to note, however, that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. 285. Central to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. In *Estelle*, which first enunciated the "deliberate indifference" standard, the Supreme Court reinstated the district court's dismissal of a prisoner's § 1983 complaint for failure to state a claim. Noting that the complaint's primary allegation was that "more should have been done" to diagnose and treat a back injury, the Court explained, "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id. at 107, 97 S.Ct. 285.

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained further the requisite subjective component of a conditions-of-confinement claim and

5

defined the exact subjective mental state required for deliberate indifference, as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38, 114 S.Ct. 1970 (emphasis added) (internal citation omitted).

Pursuant to Farmer, liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. Id. at 837, 114 S.Ct. 1970. Proof that the defendant should have perceived the risk, but did not, is insufficient. Id. at 838, 114 S.Ct. 1970. This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (*quoting Wilson*, 501 U.S. at 297, 111 S.Ct. 2321).

In support of their motion for summary judgment, Defendants present the following undisputed facts. On November 14, 1996, Tate entered the New Mexico prison system at Western New Mexico Correctional Facility. Health Services Receiving Screen, (Exhibit B1). Following a consultation, Tate was prescribed Mexitil, Cardizem and aspirin. Medical Encounter Record, (Exhibit B2). On November 18, 1996, blood tests and an EKG were ordered. Medical Encounter Record, Exhibit B3. On November 22, 1996, Tate had an ECG. ECG report, (Exhibit B6). On December 16, 1996, Mexitil and Cardizem were renewed for a period of 30 days. Medical Encounter Record

(Exhibit B7).

On February 17, 1997, Tate's medications were reviewed with him and Tate returned unused medication which had been dispensed to him. Progress Notes (Exhibit B12). On March 3, 1997, Tate requested renewal of Mexitil. Progress Notes (Exhibit B13). Dr. Dhillon reviewed Plaintiff's chart and determined that since his EKG indicated a sinus rhythm, the Mexitil should be discontinued. *Id.* On March 6, 1997, Tate asked why his medication was discontinued. Progress Notes (Exhibit 14). After he was informed of the sinus rhythm and the associated risks, Tate decided he wanted to continue the medication. *Id.* The medication was continued. *Id.*

Plaintiff was temporarily transferred to Arizona and returned to New Mexico on March 31, 1997. Medical Encounter Record (Exhibit B16). When he was received at Central New Mexico Correctional Facility, his medications were noted. *Id.* On May 1, 1997, Dr. Dhillon continued his Mexitil prescription. Progress Notes (Exhibit B18). On May 6, 1997, Dr. Dhillon discontinued the Cardizem and started Tate on Cardizem CD. Progress Notes (Exhibit B19).

On May 7, 1997, Dr. Ierides wrote a letter to Dr. Dhillon regarding a consultative examination of Tate. Letter from Heart Specialists of New Mexico (Exhibit B21). Dr. Ierides recommended that Tate undergo an echocardiogram and a left ventricular function test to assess the need for Mexitil. *Id.* On June 2, 1997, Dr. Dhillon authorized Tate for a echocardiogram. Health Services Authorization (Exhibit B22). On July 8, 1997, Dr. Ierides evaluated on the echocardiogram and recommended medical management continue. Health Services Authorization (Exhibit B24). On August 26, 1997, Mexitil and Cardizem were refilled for Tate. Cardiovascular Flow Sheet (Exhibit B25).

In light of these facts, Defendants have met their initial burden of demonstrating an absence of evidence to support Tate's case. *Celotex v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. When

7

he entered the prison system, Tate was examined by medical personnel and medication was prescribed for his heart problems. Tate was periodically reevaluated by medical personnel and his condition was closely monitored. Defendants dispensed the prescribed medication to Tate. When Dr. Dhillon questioned the advisability of continued administration of Mexitil, he referred Tate for a consultation with Dr. Ierides. Defendants authorized an echocardiogram as recommended by Dr. Ierides and followed his evaluation of the test. Defendants continued Tate on Mexitil after it was determined it was medically advisable. The facts presented by Defendants establish they were not deliberately indifferent to Tate's serious medical needs.

Once Defendants satisfied their initial burden, the burden shifted to Tate to set forth specific facts showing a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d at 891. In his response to the motion for summary judgment, Tate does not dispute the above facts. He does, however, find fault with the manner in which the medication was dispensed. More importantly, however, in his response, Tate wholly failed to demonstrate any of the Defendants actually knew of an excessive risk to his health or safety and disregarded that risk. Tate failed to proffer any material facts to rebut the Defendants' showing that they were not deliberately indifferent to his serious medical needs.

In order to resist the motion for summary judgment, Tate was required to set forth specific facts showing a genuine issue for trial as to a dispositive matter. *Universal Money Centers v. AT&T*, 22 F.3d at 1529. This he failed to do. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1356. The Court has examined the record and resolved all reasonable inferences in the light most favorable to Tate. Tate has failed to demonstrate a genuine issue for trial as to whether Defendants were deliberately indifferent to his serious medical needs.

Upon review of the evidence presented on this motion for summary judgment, the Court finds the Defendants were not deliberately indifferent to his serious medical needs. There is no question of material fact which precludes a grant of summary judgment in Defendants' favor. Therefore, Defendants' Motion for Summary Judgment, filed February 4, 1999, should be granted.

Tate alleges he was without his false teeth and prescription eyeglasses after he was returned from Arizona at the end of March, 1997. He alleges impressions were taken for new dentures in March, 1997, and he received the new dentures on July 3, 1997. In order to establish a claim for deliberate indifference based on a delay in medical treatment, a prisoner must show the delay in treatment led to further injury. *Shapley v. Nevada Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1985). Tate failed to allege the delay in replacing his dentures and glasses led to further injury. Thus, these claims should be dismissed for failure to state a claim.

Plaintiff's remaining claims against Defendants are state law claims brought under this Court's supplemental jurisdiction. 28 U.S.C. § 1367. The Court has dismissed all claims over which it had original jurisdiction and finds, in its discretion, it should decline to exercise supplemental jurisdiction over these remaining claims. 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims, which are contained in Counts 5 and 6, are therefore dismissed without prejudice.

## RECOMMENDED DISPOSITION

Defendants Motion for Summary Judgment, filed February 4, 1999, should be GRANTED.

*[signature]*

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.